Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS PENNINGTON, Individually and on behalf of all others similarly situated, | Case No: |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| v. | JURY TRIAL DEMANDED |
| TENET HEALTHCARE CORPORATION, TREVOR FETTER, DANIEL J. CANCELMI, and BIGGS C. PORTER, | |
| Defendants. | |

Plaintiff Nicholas Pennington ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by

- 1 -

defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Tenet Healthcare Corporation ("Tenet" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Tenet securities between February 28, 2012 and October 3, 2016, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.     Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Defendants conduct business in this district and a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

5.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

Class Action Complaint for Violation of the Federal Securities Laws

**PARTIES**

6.     Plaintiff, as set forth in the accompanying Certification, purchased Tenet securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7.     Defendant Tenet primarily operates acute care hospitals and related healthcare facilities. The Company is incorporated in Nevada and operates numerous acute care hospitals in California, including Lakewood. Tenet securities are traded on the New York Stock Exchange ("NYSE") under the ticker symbol "THC."

8.     Defendant Trevor Fetter ("Fetter") has served as the Chief Executive Officer ("CEO") and President of the Company throughout the Class Period.

9.     Defendant Biggs C. Porter ("Porter") served as the Chief Financial Officer ("CFO") of the Company from June 2006 until his resignation on March 30, 2012.

10.     Defendant Daniel J. Cancelmi ("Cancelmi") has served as the CFO of the Company since September 2012 and previously served as senior vice president from April 2009, principal accounting officer from April 2007 and controller from September 2004.

11.     Defendants Fetter, Porter, and Cancelmi are sometimes referred to herein as the "Individual Defendants."

12.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

Class Action Complaint for Violation of the Federal Securities Laws

(e)  was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)  was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)  approved or ratified these statements in violation of the federal securities laws.

13.  The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14.  The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

15.  The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## RELEVANT NON-PARTIES

16.  Hispanic Medical Management, Inc. d/b/a Clinica de la Mama was a Georgia corporation which operated several medical clinics that provided prenatal care to predominantly undocumented Hispanic women in Georgia and South Carolina from at least 1999 to in or around September 2010.

17.  In or around September 2010, Clinica de la Mama's owners and operators divided the clinics among themselves and two successor companies (together with Clinica de la Mama, "Clinica").

## SUBSTANTIVE ALLEGATIONS
### Materially False and Misleading Statements

18.  On February 28, 2012, the Company filed a Form 10-K for the fiscal year ended December 31, 2011 (the "2011 10-K") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's

Class Action Complaint for Violation of the Federal Securities Laws

internal control over financial reporting were effective as of December 31, 2011. The 2011 10-K was signed by Defendants Fetter, Porter, and Cancelmi.

19.    The 2011 10-K stated the following with regards to Medicaid-related patient revenues:

Medicaid-related patient revenues recognized by our continuing general hospitals from Medicaid-related programs in the states in which they are located, as well as from Medicaid programs in neighboring states, for the years ended December 31, 2011, 2010 and 2009 are set forth in the table below:

| | Years Ended December 31, | | | | | |
| | 2011 | | 2010 | | 2009 | |
| | Medicaid | Managed Medicaid | Medicaid | Managed Medicaid | Medicaid | Managed Medicaid |
|---|---|---|---|---|---|---|
| California | $ 221 | $ 127 | $ 137 | $ 111 | $ 125 | $ 99 |
| Florida | 184 | 60 | 194 | 55 | 182 | 56 |
| Pennsylvania | 91 | 195 | 53 | 161 | 53 | 157 |
| Georgia | 88 | 40 | 87 | 40 | 73 | 41 |
| Texas | 64 | 114 | 66 | 109 | 67 | 107 |
| Missouri | 52 | 5 | 81 | 6 | 75 | 6 |
| South Carolina | 40 | 22 | 61 | 20 | 52 | 17 |
| Alabama | 30 | — | 26 | — | 14 | — |
| North Carolina | 23 | — | 26 | — | 27 | — |
| Nebraska | 22 | 7 | 24 | 6 | 23 | 6 |
| Tennessee | 10 | 30 | 9 | 27 | 9 | 30 |
| | $ 825 | $ 600 | $ 764 | $ 535 | $ 700 | $ 519 |

20.    The 2011 10-K also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Fetter and Porter attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

21.    On February 26, 2013, the Company filed a Form 10-K for the fiscal year ended December 31, 2012 (the "2012 10-K") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial reporting were effective as of December 31, 2012. The 2012 10-K was signed by Defendants Fetter and Cancelmi.

22.    The 2012 10-K stated the following with regards to Medicaid-related patient revenues:

Class Action Complaint for Violation of the Federal Securities Laws

Medicaid-related patient revenues recognized by our continuing general hospitals from Medicaid-related programs in the states in which they are located, as well as from Medicaid programs in neighboring states, for the years ended December 31, 2012, 2011 and 2010 are set forth in the table below:

| | Years Ended December 31, | | | | | |
| | 2012 | | 2011 | | 2010 | |
| Hospital Location | Medicaid | Managed Medicaid | Medicaid | Managed Medicaid | Medicaid | Managed Medicaid |
|---|---|---|---|---|---|---|
| California | $ 198 | $ 148 | $ 221 | $ 127 | $ 137 | $ 111 |
| Florida | 178 | 61 | 184 | 60 | 194 | 55 |
| Georgia | 85 | 38 | 88 | 40 | 87 | 40 |
| Pennsylvania | 72 | 209 | 91 | 195 | 53 | 161 |
| Missouri | 70 | 5 | 52 | 5 | 81 | 6 |
| Texas | 67 | 123 | 64 | 114 | 66 | 109 |
| North Carolina | 40 | — | 23 | — | 26 | — |
| South Carolina | 34 | 25 | 40 | 22 | 61 | 20 |
| Alabama | 31 | — | 29 | — | 26 | — |
| Tennessee | 8 | 29 | 10 | 30 | 9 | 27 |
| | $ 783 | $ 638 | $ 802 | $ 593 | $ 740 | $ 529 |

23.    The 2012 10-K also contained signed SOX certifications by Defendants Fetter and Cancelmi attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

24.    On February 24, 2014, the Company filed a Form 10-K for the fiscal year ended December 31, 2013 (the "2013 10-K") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial reporting were effective as of December 31, 2013. The 2013 10-K was signed by Defendants Fetter and Cancelmi.

25.    The 2013 10-K stated the following with regards to Medicaid-related patient revenues:

Medicaid-related patient revenues recognized by our continuing general hospitals from Medicaid-related programs in the states in which they are located, as well as from Medicaid programs in neighboring states, for the years ended December 31, 2013, 2012 and 2011 are set forth in the table below:

- 6 -

| | Years Ended December 31, | | | | | |
| | 2013 | | 2012 | | 2011 | |
| Hospital Location | Medicaid | Managed Medicaid | Medicaid | Managed Medicaid | Medicaid | Managed Medicaid |
|---|---|---|---|---|---|---|
| California | $ 242 | $ 164 | $ 198 | $ 148 | $ 221 | $ 127 |
| Florida | 178 | 65 | 178 | 61 | 184 | 60 |
| Texas | 151 | 151 | 67 | 123 | 64 | 114 |
| Georgia | 77 | 35 | 85 | 38 | 88 | 40 |
| Pennsylvania | 74 | 200 | 72 | 209 | 91 | 195 |
| Michigan | 64 | 96 | — | — | — | — |
| Missouri | 64 | 6 | 70 | 5 | 52 | 5 |
| North Carolina | 34 | 5 | 40 | — | 23 | — |
| Illinois | 33 | 6 | — | — | — | — |
| South Carolina | 22 | 25 | 34 | 25 | 40 | 22 |
| Alabama | 13 | — | 31 | — | 29 | — |
| Arizona | 9 | 21 | — | — | — | — |
| Massachusetts | 9 | 8 | — | — | — | — |
| Tennessee | 6 | 27 | 8 | 29 | 10 | 30 |
| | $ 976 | $ 809 | $ 783 | $ 638 | $ 802 | $ 593 |

26.     The 2013 10-K also contained signed SOX certifications by Defendants Fetter and Cancelmi attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

27.     On February 23, 2015, the Company filed a Form 10-K for the fiscal year ended December 31, 2014 (the "2014 10-K") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial reporting were effective as of December 31, 2014. The 2014 10-K was signed by Fetter and Cancelmi.

28.     The 2014 10-K stated the following with regards to Medicaid-related patient revenues:

> Medicaid-related patient revenues recognized by our continuing general hospitals from Medicaid-related programs in the states in which they are located, as well as from Medicaid programs in neighboring states, for the years ended December 31, 2014, 2013 and 2012 are set forth in the table below:

Class Action Complaint for Violation of the Federal Securities Laws

| Hospital Location | Year Ended December 31, | | | | | |
| | 2014 [1] | | 2013 | | 2012 | |
| | Medicaid | Managed Medicaid | Medicaid | Managed Medicaid | Medicaid | Managed Medicaid |
|---|---|---|---|---|---|---|
| Michigan | $ 337 | $ 269 | $ 64 | $ 96 | $ — | $ — |
| California | 311 | 261 | 242 | 164 | 198 | 148 |
| Texas | 281 | 229 | 151 | 151 | 67 | 123 |
| Florida | 160 | 111 | 178 | 65 | 178 | 61 |
| Illinois | 80 | 31 | 33 | 6 | — | — |
| Georgia | 73 | 37 | 77 | 35 | 85 | 38 |
| Pennsylvania | 73 | 194 | 74 | 200 | 72 | 209 |
| Missouri | 67 | 9 | 64 | 6 | 70 | 5 |
| Massachusetts | 39 | 46 | 9 | 8 | — | — |
| North Carolina | 29 | 8 | 34 | 5 | 40 | — |
| South Carolina | 15 | 31 | 22 | 25 | 34 | 25 |
| Alabama | 12 | — | 13 | — | 31 | — |
| Tennessee | 7 | 29 | 5 | 27 | 8 | 29 |
| Arizona | 1 | 115 | 9 | 21 | — | — |
| | $ 1,485 | $ 1,370 | $ 975 | $ 809 | $ 783 | $ 638 |

(1)   Includes revenues related to the 28 hospitals we acquired from Vanguard on October 1, 2013, as well as TRMC, Resolute Health Hospital and Emanuel Medical Center.

29.    The 2014 10-K also contained signed SOX certifications by Defendants Fetter and Cancelmi attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

30.    On February 22, 2016, the Company filed a Form 10-K for the fiscal year ended December 31, 2015 (the "2015 10-K") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial reporting were effective as of December 31, 2015. The 2015 10-K was signed by Defendants Fetter and Cancelmi.

31.    The 2015 10-K stated the following with regards to Medicaid-related patient revenues:

> Medicaid-related patient revenues recognized by our continuing general hospitals from Medicaid-related programs in the states in which they are located, as well as from Medicaid programs in neighboring states, for the years ended December 31, 2015, 2014 and 2013 are set forth in the table below:

Class Action Complaint for Violation of the Federal Securities Laws

|  | Years Ended December 31, | | | | | |
|  | 2015 [1] | | 2014 [1] | | 2013 | |
| Hospital Location | Medicaid | Managed Medicaid | Medicaid | Managed Medicaid | Medicaid | Managed Medicaid |
|---|---|---|---|---|---|---|
| Michigan | $ 366 | $ 306 | $ 337 | $ 270 | $ 64 | $ 96 |
| California | 343 | 401 | 311 | 257 | 241 | 162 |
| Texas | 264 | 237 | 280 | 223 | 150 | 148 |
| Florida | 97 | 162 | 158 | 103 | 176 | 61 |
| Illinois | 88 | 50 | 80 | 32 | 33 | 6 |
| Georgia | 69 | 39 | 73 | 36 | 76 | 35 |
| Missouri | 50 | 14 | 67 | 9 | 64 | 6 |
| Pennsylvania | 66 | 206 | 73 | 194 | 74 | 200 |
| Massachusetts | 37 | 50 | 39 | 46 | 9 | 8 |
| North Carolina | 28 | 6 | 26 | 5 | 31 | 3 |
| Alabama | 37 | — | 12 | — | 13 | — |
| South Carolina | 16 | 33 | 18 | 34 | 25 | 26 |
| Tennessee | 6 | 32 | 7 | 29 | 6 | 27 |
| Arizona | (16) | 195 | 1 | 113 | 9 | 21 |
|  | $ 1,451 | $ 1,731 | $ 1,482 | $ 1,351 | $ 971 | $ 799 |

(1)  Includes revenues related to the 28 hospitals we acquired from Vanguard on October 1, 2013, as well as TRMC, Resolute Health Hospital, Emanuel Medical Center , Hi-Desert Medical Center and our hospitals located in Tucson, Arizona.

32.    The 2015 10-K also contained signed SOX certifications by Defendants Fetter and Cancelmi attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

33.    The statements referenced in ¶¶ 18 – 32 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company illegally paid kickbacks to Clinica to induce the referral of Clinica patients to the Company's hospitals for labor and delivery; (2) through this scheme, the Company defrauded the Georgia Medicaid program; and (3) as a result, Defendants' statements about the Company's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

**The Truth Emerges**

34.    On August 1, 2016, the Company issued a press release during aftermarket hours announcing that it reached an agreement in principle with the U.S. government to resolve the Clinica criminal investigation and civil litigation, stating in part:

**Clinica de la Mama Update**

Class Action Complaint for Violation of the Federal Securities Laws

The Company believes that it has reached an agreement in principle with the government to resolve the Clinica de la Mama criminal investigation and civil litigation for $514 million. Based on the agreement in principle, we have increased our reserve from $407 million to $516 million to reflect the monetary components of the agreement in principle and certain other costs. This amount is reflected in Tenet's consolidated balance sheet as of June 30, 2016 as accrued legal settlement costs. The increase in reserve lowered net income by approximately $67 million or $0.67 per share during the second quarter of 2016. Tenet expects the payment to be made as early as the third quarter of 2016, and to be funded through general corporate sources of liquidity, including cash on the balance sheet and borrowings under the Company's revolving credit facility.

In addition to the monetary component, the agreement in principle includes the following non-monetary terms: (i) the execution of a Non-Prosecution Agreement, which includes the appointment of a corporate monitor for a period of three years; (ii) the agreement of the two indirect, wholly owned subsidiaries that previously operated Atlanta Medical Center and North Fulton Hospital, and which currently have no operating assets, to each plead guilty to a single-count indictment; and (iii) the execution of a corporate integrity agreement. The final resolution is subject to the negotiation and execution of definitive agreements. For additional information regarding these and other terms of the agreement in principle, see Note 10 to the Consolidated Financial Statements included in the Company's Form 10-Q for the three months ended June 30, 2016.

35.     On this news, shares of the Company fell $1.34 per share or approximately 4% from its previous closing price to close at $27.57 per share on August 2, 2016, further damaging investors.

36.     On October 3, 2016, the Company issued a press release announcing that it finalized an agreement with the U.S. government to resolve the Clinica criminal investigation and civil litigation, stating in part:

**Tenet Healthcare Finalizes Previously Disclosed Agreement to Resolve Clinica de la Mama Investigation and Litigation**

Class Action Complaint for Violation of the Federal Securities Laws

**DALLAS** – **October 3, 2016** – Tenet Healthcare Corporation (NYSE: THC) today announced that it has finalized its previously disclosed agreement in principle with the U.S. government to resolve the Clinica de la Mama criminal investigation and civil litigation, which involved referral source arrangements at three of Tenet's former hospitals and one current hospital. The settlement was reached with the U.S. Department of Justice (DOJ), the U.S. Attorneys' Offices for the Northern and Middle Districts of Georgia, and the State Attorneys General for Georgia and South Carolina.

Trevor Fetter, chairman and chief executive officer, stated, "The conduct in this matter was unacceptable and failed to live up to our high expectations for integrity. The relationships between the four hospitals and Clinica de la Mama violated the explicit requirements of our compliance program and were inconsistent with the strong culture of compliance we've worked hard to establish at Tenet. We take seriously our responsibility to operate our business in accordance with the highest ethical standards, every day and in every interaction."

As part of Tenet's commitment to strengthen safeguards and continually improve its compliance program, the company has amended and expanded existing policies related to referral source arrangements, including limiting the services that the company's facilities purchase from referral sources. Tenet also is implementing more rigorous standards in its vendor selection process, sharpening its audit and oversight activities, and instituting enhanced training for employees on referral source policy changes.

**Terms of the Settlement**
As previously disclosed on August 1, 2016, Tenet will make settlement payments of approximately $514 million and pay approximately $3 million of related fees and expenses. Tenet expects to make these payments during the fourth quarter using available liquidity, including cash and borrowings under the company's revolving credit facility.

The settlement also includes the execution of a three-year non-prosecution agreement (NPA) with the DOJ. As part of the NPA, Tenet and the DOJ will select a compliance monitor for a period of three years to oversee Tenet's compliance with the Federal Anti-Kickback Statute and Stark

Class Action Complaint for Violation of the Federal Securities Laws

laws relating to referral source arrangements. In addition, two wholly-owned subsidiaries that previously operated Atlanta Medical Center and North Fulton Hospital in Georgia will plead guilty to a single count of conspiracy to violate the Federal Anti-Kickback Statute and defraud the United States. Tenet completed the divestiture of both facilities on March 31, 2016, and the subsidiaries currently have no operating assets.

The final resolution is subject to court acceptance of the plea agreements. Copies of the resolution documents will be filed in a Form 8-K with the Securities and Exchange Commission.

37.     On that same day, the Company filed a Form 8-K detailing the finalized and executed agreements with the DOJ. Attached as an exhibit to the Form 8-K is the Company's Non-Prosecution Agreement ("NPA") with the DOJ's Criminal Division, Fraud Section and the United States Attorney's Office for the Northern District of Georgia.[1]

38.     According to the NPA:

- Senior executives and employees of subsidiaries of Tenet engaged in at least a 10-year scheme to pay over $12 million to the owners and operators of a chain of prenatal care clinics designed to induce the owners and operators to:

  (1)     refer Medicaid patients to Atlanta Medical Center, Inc., North Fulton Medical Center, Inc. d/b/a North Fulton Hospital, palding Regional Medical Center, Inc. d/b/a Spalding Regional Medical Center, and Hilton Head Hospital for labor and delivery services; and

  (2)     arrange for these hospitals to provide services to these Medicaid patients and their newborns, resulting in the hospitals receiving over $146 million from the Medicaid and Medicare programs for the illegally referred patients;

---

[1] The NPA is attached as Exhibit 1.

Class Action Complaint for Violation of the Federal Securities Laws

39.   According to the Statement of Facts of the NPA:

- From at least 2000 through at least 2013, in the Northern District of Georgia and elsewhere, and as described further below, (1) Clinica's owners and operators, (2) certain executives at the Tenet Hospitals, acting as agents of the Tenet Hospitals, at least in part for the benefit of the Tenet Hospitals, and within the course and scope of their employment and authority at the Tenet Hospitals, and (3) others, agreed that the Tenet Hospitals would pay the owners and operators of Clinica for referring its Medicaid patients (the "Clinica patients") to the Tenet Hospitals for delivery and arranging for services to be provided to Clinica patients and their newborns at the Tenet Hospitals.

- The purpose of the conspiracy was for Clinica's owners and operators and others to unlawfully enrich themselves, and for certain executives at the Tenet Hospitals to unlawfully enrich and benefit the Tenet Hospitals, and themselves, by paying, and causing to be paid, and receiving illegal remuneration designed to induce Clinica's owners and operators to: (1) refer Clinica patients to the Tenet Hospitals; and (2) arrange for services to be provided to Clinica patients and their newborns at the Tenet Hospitals, all so that the Tenet Hospitals could bill and obtain money from the Medicaid and Medicare DSH Programs for services provided to the unlawfully referred Clinica patients and their newborns.

40.   On this news, shares of the Company fell $0.91 per share or approximately 4% from its previous closing price to close at $21.75 per share on October 3, 2016, further damaging investors.

Class Action Complaint for Violation of the Federal Securities Laws

41.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Tenet securities traded on the NYSE during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

43.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Tenet securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

44.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

45.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

46.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- •    whether the federal securities laws were violated by Defendants' acts as alleged herein;

- •    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

- •    whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- •    whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

- •    whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

- •    whether the prices of Tenet securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- •    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

47.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

Class Action Complaint for Violation of the Federal Securities Laws

48.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Tenet securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common shares; and

- Plaintiff and members of the Class purchased and/or sold Tenet securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

49.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

50.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

51.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

- 16 -

52.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

53.     During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

54.     The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- •     employed devices, schemes and artifices to defraud;
- •     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- •     engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Tenet securities during the Class Period.

55.     The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them

privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

56.    Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

57.    As a result of the foregoing, the market price of Tenet securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Tenet securities during the Class Period in purchasing Tenet securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

58.    Had Plaintiff and the other members of the Class been aware that the market price of Tenet securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased Tenet securities at the artificially inflated prices that they did, or at all.

59.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

60.    By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial

Class Action Complaint for Violation of the Federal Securities Laws

damages which they suffered in connection with their purchase of Tenet securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### <u>Against The Individual Defendants</u>

61.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

62.    During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

63.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

64.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Tenet securities.

65.    Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors

Class Action Complaint for Violation of the Federal Securities Laws

of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

66.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post- judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Class Action Complaint for Violation of the Federal Securities Laws

1  Dated: October 7, 2016

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Laurence Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

Class Action Complaint for Violation of the Federal Securities Laws